# ZITSKE VS. GOLDBERG.

CONSTRUCTION OF STATUTES. (1) *Amendment by necessary implication.* (15) *Statute partly valid and partly void.*

REPLEVIN: JURISDICTION: DAMAGES: PLEADING. (1, 2) *Jurisdiction of J. P. in replevin; as to value of property, and as to damages for detention.* (3) *Jurisdiction of circuit court on appeal from J. P., as to amount of damages.* (4) JUDGMENT ON APPEAL, *where too great damages awarded.* (5) COMPLAINT *in statutory form: Damages recoverable though not demanded.* (7, 8) *Exchange of chattels with warranty, when property repleviable; condition precedent.*

EVIDENCE. (9) *Testimony inaccurate in form, but clear in meaning.* (10, 11) *Testimony taken before J. P.; how and for what purpose it may be shown in circuit court on appeal.*

MUNICIPAL CHARTERS: MUNICIPAL COURTS. (12) *Village charter a public law.* (13) *Power of legislature as to municipal courts.* (14) *Jurisdiction of such courts.* (15–17) *Charter of New Lisbon: Police justice a municipal court. Territorial extent of his jurisdiction. His jurisdiction in replevin.*

1. Sec. 5, ch. 120, R. S., gave justices' courts jurisdiction of various classes of actions, there enumerated and defined, including actions to recover possession of personal property, wherein the value of the property claimed shall not exceed "*one hundred dollars.*" Sec. 132 provided for an action in such courts to recover possession of personal property not exceeding one hundred dollars in value, with damages for its unjust caption or detention; while the sections immediately following regulated the practice in such actions. A subsequent act amending sec. 5 by substituting "two hundred dollars" for the sum previously named, *held* to extend by *necessary implication* to sec. 132, and to confer jurisdiction of the action there described where the value of the property involved does not exceed two hundred dollars.

2. In such an action the justice may render judgment for a return of the property, or for its value in case a return cannot be had, and also for damages for the detention, etc.; but subd. 2, sec. 5, ch. 120, R. S., has the effect of limiting such last mentioned damages to two hundred dollars.

3. In general, on appeal from a judgment of a justice's court, the jurisdiction of the circuit court is limited to that of the justice; and although an increase of the claim for damages beyond the amount of a justice's jurisdiction may be made by leave of the court (12 Wis., 58; 19 id., 193), yet without leave the general rule governs.

Zitske vs. Goldberg.

4. Where the justice renders a valid judgment in plaintiff's favor, for possession of the property with damages for its detention, and, on appeal, without any amendment of the complaint so as to demand more than two hundred dollars damages, the verdict and judgment in the circuit court award him damages in excess of that sum, this court, on reversing such judgment for that reason, may remand the cause with directions to render judgment in plaintiff's favor for two hundred dollars damages, provided he shall remit the excess, and otherwise to grant a new trial.

5. The complaint being in the statutory form (which does not allege damages), and the statute clearly providing for the recovery of "damages for the detention," the rule that no special damages can be recovered where none are alleged in the complaint, is inapplicable.

6. In replevin for a horse the plaintiff may recover as damages not only the value of the use of the animal during the time it was unjustly detained, but also, in case it was injured while so detained, by defendant's neglect, his expenses in taking care of and doctoring it in excess of what those expenses would have been but for the injury, and for loss of service after regaining possession, and the permanent depreciation in value of the horse resulting from such injury.

7. Where the parties had made an exchange of horses, if defendant's horse was warranted and did not conform to the warranty, plaintiff might return him to defendant, and thereupon become entitled, on demand, to a return of his own horse.

8. In such exchange, plaintiff's horse being estimated at a higher value than that of defendant, the latter was to credit plaintiff on his books, and did so credit him, with the amount of a certain prior account existing in defendant's favor against plaintiff. *Held*, that payment of such account was *not a condition precedent* of plaintiff's right to return defendant's horse (for a breach of warranty) and recover possession of his own; though the rescission of the contract of exchange revived plaintiff's liability on said account.

9. The admission of certain answers of a witness, inaccurate in form and capable of being so construed as to be irrelevant and incompetent, *held* to be no error, it appearing to this court that the evident meaning of the witness (who was a German) was such as rendered the answers relevant and proper evidence.

10. The minutes of a justice of the peace of testimony taken at a trial before him are not admissible (except by stipulation) at the trial of the same cause on appeal in the circuit court, either as evidence of the facts at issue, or to impeach or sustain the credibility of a witness by showing what he testified before the justice.

[11. Per LYON, J. The justice himself may be examined in such cases to

show what a witness testified to on the trial before him, and on such examination may refer to his minutes to refresh his memory; and such minutes would be competent to impeach the recollection of the justice, proper questions being first put to him to lay a foundation for such evidence.]

[On a rehearing.]

12. The charter of a village is a public or general law, and not a private law, within the meaning of sec. 18, art. IV of the state constitution.

13. Under sec. 2, art. VII of the constitution, the legislature may create a municipal court for an incorporated village, and confer upon it jurisdiction within the village, not exceeding that of the circuit court, but cannot extend its jurisdiction beyond the limits of the municipality within which the judge thereof is elected. 32 Wis., 510, 518.

14. In all actions the process of a municipal court must be served within the municipality, though in *transitory* actions a voluntary appearance by the defendant will give jurisdiction of his person.

15. The charter of a village (ch. 485, P. & L. Laws of 1870) provides that the police justice to be elected therein shall have all the authority, jurisdiction and power of a J. P., and shall have civil and criminal jurisdiction *coextensive with the limits of two counties named. Held,*

(1) That the court so created is a "municipal court," within the meaning of the constitution.

(2) That so much of the charter as purports to give said justice jurisdiction beyond the limits of said village, is void.

(3) That so much thereof as creates said court and gives it jurisdiction *within the village,* will nevertheless be upheld; the valid portions of the act not being dependent upon the void portion thereof, and the one not being a compensation or consideration for the other. 13 Wis., 308; 32 id., 510.

16. This last conclusion will not be prevented by the fact (if it be a fact) that no provision is made for a removal of a cause from such court to a J. P., or for a trial of it by a J. P., in case application is made for such removal, or in case the police justice is absent, sick or disqualified.

17. The present action not having been commenced before a J. P. (as was erroneously assumed on the first hearing of this appeal), but before said police justice, who has jurisdiction to the amount of $300, and the verdict having been for only $208 damages for the detention of the property replevied: *Held,* that the police court, and the circuit court on appeal, had jurisdiction.

APPEAL from the Circuit Court for *Shawano* County.

This is an action of replevin brought before a police justice

of the village of New London, to recover the possession of a horse alleged to have been unlawfully detained by the defendant from the plaintiff. The complaint is in the statutory form, and states the value of the horse at one hundred and fifty dollars. The answer consists of a general denial, and an averment that the defendant is the owner of the horse described in the complaint. The trial before the justice resulted in a judgment for the plaintiff for fifty dollars damages, and a further judgment that he have return of the horse, the value of which was assessed at one hundred and fifty dollars. The defendant appealed to the circuit court, after which, and some five weeks after the alleged unlawful detention commenced, the horse came to the possession of the plaintiff, and has ever since remained in his possession.

On the trial in the circuit court, the testimony of the plaintiff tended to prove that the parties exchanged horses on the condition that if, upon trial, the plaintiff did not like defendant's horse, he might return the same to the defendant and take back his own horse, being the one in controversy. The defendant's testimony tends to prove that the trade was absolute and unconditional, but that he warranted his horse to pull well. It appears that, after trying the defendant's horse, the plaintiff returned him for the alleged reason that the horse was balky, and demanded the horse in controversy. He also offered to return a check which he had received from the defendant, for the balance of the boot which the latter agreed to pay in the trade, over and above an account which he had against the plaintiff. It seems that at the time of the exchange, or soon after, such account was balanced on defendant's books by a credit of a part of the boot so agreed to be paid. The testimony of the plaintiff also tends to show that the horse in controversy was greatly and permanently injured while in the possession of the defendant, by reason whereof the plaintiff lost the services of the animal for a long time, and was put to considerable expense in partially curing him.

Numerous exceptions to the rulings of the court were taken on the trial, a sufficient statement of which will be found in the opinion. The jury returned the following verdict: "The jury find for the plaintiff as follows: 1. That said plaintiff, at the time of the commencement of this action, was the owner of the horse in controversy herein. 2. That said plaintiff, at the time of the commencement of this action, was, and still is, entitled to the possession of the horse. 3. That the defendant unlawfully withheld said horse from the possession of said plaintiff for the period of five weeks from the 27th day of December, 1872; that the value of said horse was one hundred and fifty dollars. 4. That the value of said horse is eighty dollars. 5. And we assess the plaintiff's damages for the unlawful detention of the horse by defendant, and for injuries to the horse while in the defendant's possession, at the sum of two hundred and eight dollars."

A motion for a new trial was denied by the court; and judgment was entered in accordance with the verdict; from which judgment the defendant appealed.

*Hudd & Wigman*, for appellant:

1. Under subd. 3, sec. 5, ch. 120, R. S., as amended by ch. 30, Laws of 1870, a justice may entertain jurisdiction of actions for the recovery of personal property not exceeding $200 in value; but where a claim for damages is joined, the action is governed by sec. 132 of ch. 120, R. S., which stands without amendment or repeal (unless by implication), and a justice has no jurisdiction where, as in this case, the value of the property exceeds $100. 2. As there was no amendment to the pleadings, the circuit court had no authority, on appeal, to render judgment in excess of the justice's jurisdiction. 6 Wis., 580; 7 id., 143. 3. The questions asked as to the *worth* of the horse were improper. The inquiry should have been for the market value. 22 Wis., 522; 20 id., 261. The questions relative to the damages were not confined to legal damages, or to those resulting directly from defendant's fault, and were im-

proper. 17 N. Y., 340; 27 id., 282; 7 Cush., 319; 45 Me., 168. 4. The minutes of testimony taken by the justice are made by law matter of record, and were competent evidence upon the question of credibility. Sec. 77, ch. 120, R. S.; 4 Wis., 219; 16 id., 106. 5. The complaint alleges no special damages, and therefore testimony to prove such was incompetent. 5 Cal., 327; 28 id., 102; 16 Wis., 80; 22 id., 522; Sedgwick on Dam., 731 and notes; 46 Pa. St., 438; 37 Vt., 594. 6. The expense incurred by the plaintiff in doctoring the horse was at his own risk (5 Cal., 327); and the damages could not in any case exceed the value of the animal, or a total loss. 7. The account against the plaintiff, which was canceled upon the defendant's books as part of the *boot money* on the trade, not having been paid by the plaintiff, he could not rescind. 8. The damages awarded by the jury are excessive.

*Myers & Kennedy*, for respondent, cited *Morris v. Baker*, 5 Wis., 389; *Williams v. Phelps*, 16 id., 80; *Beveridge v. Welch*, 7 id., 465; *Meschke v. Van Doren*, 16 id., 319; *Hinkley v. Beckwith*, 13 id., 31; *Spicer v. C. & N. W. R'y Co.*, 29 id., 580; *Bennett v. Lockwood*, 20 Wend., 223; 3 Starkie on Ev., 1753; 2 id., 145; and 1 Greenl. Ev., §§ 170 and 462, as covering the ground of all objections taken to evidence on the trial. They also argued that the minutes of the justice could be received in evidence only upon written stipulation (2 Tay. Stats., p. 1399); that it was not necessary that the plaintiff should pay his store account before he could rescind the trade, as that would leave the defendant in a better position than he was before; that the rule of damages acted upon by the court below was sustained by the authorities (*Suydam v. Jenkins*, 3 Sandf., 615; 31 N. Y., 679; 37 id., 146; 38 id., 430; *Young v. Willett*, 8 Bosw., 486; Sedgw. on Dam., 291, 327, 475; *McDonald v. North*, 47 Barb., 530; *Forsyth v. Wells*, 31 Pa. St., 291; *Reggio v. Braggiotti*, 7 Cush., 166; *Foster v. Rogers*, 27 Ala., 602; *Dorsey v. Gassaway*, 2 Harris & J., 413); that the case was one for vindictive damages, and the court should so have charged (*McDonald v.*

*Scaife*, 11 Pa. St., 381; *Schofield v. Ferrers*, 46 id., 438; Sedgw. on Dam., 502; *Cabel v. Dakin*, 20 Wend., 172); and that the verdict was so clearly supported by the evidence, that any inaccuracies in the charge should be overlooked. 5 Wis., 187; 8 id., 329; 15 id., 50; 21 id., 466; 21 Wend., 354; 3 Hill, 213.

The following opinion was filed at the January term, 1875.

LYON, J. 1. It is claimed that the justice had no jurisdiction of the action, because the value of the property in controversy exceeded one hundred dollars. The complaint avers, and the judgment of the justice determined, that such value was one hundred and fifty dollars. This claim is predicated upon the provisions of sec. 132, ch. 120, R. S. (Tay. Stats., 1379, § 139). The section is as follows: "Whenever any goods or chattels shall have been wrongfully taken or shall be wrongfully detained, the value of which shall not exceed one hundred dollars, an action may be brought for the recovery of the possession thereof, and for the recovery of the damages sustained by reason of such unjust caption or detention, except in the cases hereinafter specified." It may be remarked that this is not one of the excepted cases. This section, when enacted, was in harmony with subd. 3 of sec. 5 of the same chapter, which, as it then stood, conferred upon justices of the peace jurisdiction of "actions to recover the possession of personal property wherein the value of the property claimed shall not exceed one hundred dollars." But by ch. 30, Laws of 1870, the latter section was so amended as to extend such jurisdiction to cases where the value of the property claimed does not exceed two hundred dollars. (Tay. Stats., 1352, § 5.)

There can be no doubt whatever that, by the act of 1870, the legislature intended to and did extend the jurisdiction of justices of the peace to actions of this class wherein the value of the property claimed does not exceed two hundred dollars. Such intention is as apparent as it would have been had the

act in terms made the corresponding amendment to section 132. Hence, under well settled and familiar rules for the construction of statutes, it must be held that the act of 1870, by clear and necessary implication, does so amend or modify the latter section, and that the justice had jurisdiction of the present action.

2. The court instructed the jury that, although the parties made and completed an exchange of horses, still, if the defendant's horse was not as warranted, the plaintiff was not bound to keep such horse, but might return him to the defendant, and thereupon become entitled, on demand, to a return of the horse in controversy.

This instruction is sustained by several decisions of this court. In *Boothby v. Scales*, 27 Wis., 626, the following language is employed : " It is settled in this state, as in several others, that for a breach of warranty, without actual fraud on the part of the vendor, the purchaser is entitled to rescind the contract, and for that purpose may return the goods, or, what is the same thing, offer to return them, within a reasonable time." (p. 636.) The cases which sustain the rule, in this and other states, will be found cited on the last mentioned page.

3. The court refused to give an instruction proposed on behalf of the defendant, to the effect that before the plaintiff could maintain this action it was necessary that he pay the defendant the account mentioned in the foregoing statement of the case ; or in other words, that the payment of such account was a condition precedent to his right to rescind the contract of exchange.

When a party seeks to rescind a contract for any reason, he doubtless must, as far as possible, restore or offer to restore the opposite party to the condition in which he stood before the contract was made. *Hendricks v. Goodrich*, 16 Wis., 679. In this case the plaintiff returned, or offered to return, all he received of the defendant, and that was sufficient. The account was not made on the faith of the horse trade, and, not-

withstanding it was balanced on the books of the defendant, the rescission of the contract of exchange revived the account and restored the plaintiff's liability to pay it. Thus the *status quo* of the defendant was fully restored, without payment of the account. We conclude that the instruction was properly refused.

4. On the subject of damages, the court instructed the jury, in substance, that if they found for the plaintiff, he was entitled to recover for the loss of the use of the horse while unlawfully detained by the defendant; and if, while so detained, the horse was injured through the carelessness or neglect of the defendant, the plaintiff might also recover his expenses in taking care of and doctoring the horse, over and above what those expenses would have been had the animal not been injured; also for loss of service, and permanent depreciation in value, of the horse, resulting from such injury. The learned circuit judge stated the rule of damages to the jury in a variety of forms; but the foregoing is believed to be a correct statement of the whole of the charge on that subject.

It seems to us that the law on this subject was correctly given to the jury. If the plaintiff is entitled to recover in the action, he is entitled to recover compensation for loss of the use of the horse during the time the defendant unlawfully detained him. It was so held in *Williams v. Phelps*, 16 Wis., 80, which was an action of replevin for a span of horses. Indeed, this rule, when applied to the detention of property the daily use of which is the chief benefit that can be derived from it, is so manifestly just that it is scarcely necessary to cite authorites to support it. The other elements or grounds of damages laid down by the circuit judge seem equally just and reasonable. Conceding his right to recover, the plaintiff should be indemnified for all losses, the direct and proximate cause of which was the wrongful conduct of the defendant. If the horse was returned to the plaintiff in an injured condition, and there was reasonable ground to believe that he might be cured or his

condition improved by medical treatment, the plaintiff had the right to resort to such treatment; and no good reason is per-ceived why the expenses thereof, and the extra expenses of the care of the horse, should not be paid by him whose wrongful act rendered such expenses necessary.   The same remarks will also apply to the loss of service after the horse came to the possession of the plaintiff, and to the permanent depreciation in the value of the horse, caused by such injuries.   Unless the judge gave the jury the correct rule of damages, we do not see how the plaintiff can obtain that full indemnity for the loss he has sustained by reason of the wrongful acts or omissions of the defendant, to which the law declares he is entitled.

5. It is objected that the jury awarded excessive damages. We understand the finding that the value of the horse is eighty dollars, relates to his value in his improved condition, and not at the time he was returned to the plaintiff.   If so, the fair con-struction of the verdict is, that it assesses the damages for the permanent injury to the horse, caused by the defendant's wrongful act, at seventy dollars, and for the expenses of medi-cal treatment and care and for loss of service, at one hundred and thirty-eight dollars.   If this view of the verdict is correct, we find in the bill of exceptions sufficient testimony to support the assessment of damages.

6. It is further claimed that no special damages can be re-covered because none are alleged in the complaint.   The form of the complaint is prescribed by statute (R. S., ch. 120, sec. 135), and the present complaint is in the statutory form.   This is a conclusive answer to the objection, for it cannot be assumed that by prescribing a form of complaint which is silent on the subject of damages, the legislature intended to deprive the plaintiff of the right to recover damages for the unlawful de-tention of his property.   Indeed, the statute above quoted (ch. 120, sec. 132) expressly gives the right to damages.   Hence, the cases cited to this proposition by the learned counsel for the defendant are not applicable.

7. The nature of most of the exceptions taken on behalf of the defendant to the rulings of the court on objections to testimony will sufficiently appear in the following extract from the bill of exceptions. The plaintiff, after testifying to the circumstances and conditions of the exchange of horses, the recovery by him of the possession of the horse in controversy, and the intermediate transactions, was examined on his own behalf, and allowed, against objections duly made, further to testify as follows:

" *Question.* What was the colt worth when *Goldberg* got it from you?

" Objected to as incompetent and immaterial. Objection overruled; to which the defendant excepted.

" *Ans.* It was worth $150. The mare he let me have was sorrel; don't know how old she was.

" *Q.* What was the condition of the colt when *Goldberg* took him?

" Objected to as immaterial and incompetent. Objection overruled; to which defendant excepted.

" *A.* He was in pretty good order.

" *Q.* In what condition was he when you got him back?

" Objected to as above; objection overruled; defendant excepts.

" *A.* After I took him back he was painted all over, and he had eight holes in his hind foot and had big legs. I doctored him all winter; $300 damages on me. The red paint was some on his side all over, and on his foot; the holes were above the hoof; he could hardly walk on it.

" *Q.* How much less was the colt worth when you took him back from *Goldberg?*

" Objected to as incompetent. Objection overruled; to which defendant excepted.

" *A.* Hardly $40.

" *Q.* How long did he continue to be lame?

" Objected to as above.   Objection overruled; defendant excepted.

" *A.*   One foot is spoiled to this day.   We worked him but little; we worked him some hauling cordwood.   He was very poor — not able to work for six or seven months after I got him .back.

" *Q.*   Were you put to any expense in doctoring the horse?

" Objected to by defendant as incompetent and immaterial. Objection overruled; to which defendant excepted.

" *A.*   $50.

" *Q.*   How long were you deprived of the use of the horse?

" Objected to as incompetent and immaterial.   Objection overruled; to which the defendant excepted.

" *A.*   About eight months from the time I got him till he could work.

" *Q.*   How much was the use of that horse worth during those eight months?

" Objected to by defendant on the ground that it was improper and incompetent.   Objection overruled; to which the defendant excepted.

" *A.*   It was worth $200; the doctoring was worth $50."

Many of the foregoing objections relate to the rule of damages, and have already been decided adversely to the defendant. The remainder are chiefly to the form of the interrogatories. The questions as to the value of the horse manifestly refer to, and must be understood to mean, the market value.   In the answer to the question, " In what condition was he when you got him back?" the witness evidently testified to the condition of the horse at the time indicated in the question, although his language may admit of a different construction. It appears that the witness was a German, and usually conversed in his native language, and he probably spoke English imperfectly.   These facts are sufficient to account for the want of precision in his answer.   The questions as to loss of the use of

the horse and expenses of doctoring, we understand, refer to loss and expense caused by the alleged injuries to the horse while he was wrongfully detained by the defendant. This satisfactorily appears from the scope and evident purpose of the whole examination. Such being our understanding of the questions and testimony to which objections were taken, we think the court properly overruled the objections.

But one other objection to testimony requires notice. It became material on the trial to ascertain what the defendant testified to, in relation to certain matters, on the trial before the justice, and several witnesses were examined and testified on the subject. The defendant thereupon offered in evidence the minutes of all the testimony taken by the justice; but an objection thereto was sustained by the court. Was this error?

In *Wilson v. Noonan*, 35 Wis., 321, it was held that the testimony contained in a case or bill of exceptions, of a witness who deceased pending an appeal to this court, might be read in evidence on a subsequent trial of the same cause. By reference to the cases there cited, it will be seen that there is some conflict between them as to whether such testimony can be read for the purpose of showing that a witness had testified differently on the two trials. But the cases which hold such testimony admissible, do so on the express grounds that a case or bill of exceptions is presumed to have been subjected to the careful scrutiny of counsel for both parties and the judge who presided at the trial, thereby greatly increasing the probability of its accuracy, and generally insuring complete accuracy.

The minutes of testimony taken by a justice of the peace on a trial before him are subjected to no such scrutiny, and possess none of these important and essential elements of verity. On the contrary, they are made in the haste and confusion of trials, generally by men who are quite unused to the business, and no power to make corrections after the trial is vested in any one. Hence the reasons for admitting such testimony when it is found in a settled case or bill of exceptions, entirely

fail when the offered testimony is contained in the justice's minutes. Without deciding whether the testimony would be admissible or not, if contained in a case or bill, we think it must be held that such minutes are not admissible, either generally in the case or to impeach or sustain the credibility of a witness. It is not difficult to foresee that a different rule might, and probably would, lead to great wrong and injustice. It should be observed that in this case the justice would have been a competent witness to prove what the defendant testified to on the trial before him; and doubtless he might have referred to the minutes, if written by himself, to refresh his recollection; and doubtless, also, such minutes would be competent to impeach the recollection of the justice — proper questions being first put to him to lay the foundation for their introduction for that purpose. But we have no such case before us. Here the minutes were offered generally, as evidence in the action. The offer was not restricted to the defendant's testimony therein contained, but included all of the testimony; and the purposes for which the same were so offered were not disclosed.

*Driscoll v. Damp*, 16 Wis., 106, is not in conflict with the views above expressed. A similar question was made and argued in that case, but was not decided. We are strengthened in the opinion that such testimony is inadmissible by a provision of statute to the effect that the return of a justice on appeal (which, of course, includes his minutes of the testimony) may be read in evidence on the trial of the appeal in the circuit court, *on written consent signed by the parties or their attorneys*. Tay. Stats., 1399, § 235. The fair inference is, that the legislature considered the return inadmissible under any circumstances, and thereupon enacted a single exception to the rule.

We conclude that the justice's minutes of the testimony were properly excluded.

8. Thus far we find the case free from error, and there only

remain for determination the questions whether the amount of the judgment for damages exceeds the jurisdiction of a justice of the peace, and, if so, how such judgment is affected thereby.

It is apparent from all the provisions of the statutes on the subject, that a justice of the peace has jurisdiction of an action of replevin where the value of the property sought to be recovered does not exceed two hundred dollars. The justice may order a return of the property, and also has jurisdiction to render judgment in such action for damages for the wrongful detention thereof. R. S., ch. 120, secs. 132, 144, 155. These sections contain no limitation of the damages which may thus be recovered; but we think that subd. 2 of sec. 5 prescribes a limitation, and that such damages cannot exceed two hundred dollars. Aside from the last mentioned statute, the general object and policy of the law is to limit the jurisdiction of justices of the peace to that sum, except where judgment is confessed. Hence we must hold that if the value of the property which is the subject matter of the action does not exceed two hundred dollars, a justice of the peace may order the delivery thereof to the party entitled, or, if delivery cannot be made, may adjudge that such party recover the value thereof, and may also, in the same action, render a further judgment for damages, but not to exceed two hundred dollars. Hence the judgment for damages in the present case exceeds the jurisdiction of a justice of the peace. And the remaining question is, How does this fact affect the judgment of the circuit court?

The general rule of law is, that on appeal from a judgment rendered by a justice of the peace, the jurisdiction of the circuit court is limited to that of the justice; but an increase of the claim for damages has been made by leave of the circuit court, in some cases, by which the plaintiff has claimed and recovered damages beyond the jurisdiction of the justice. *Dressler v. Davis*, 12 Wis., 58; *Felt v. Felt*, 19 id., 193. But without such leave the general rule governs. In this case no

leave to increase such claim was given or asked, and hence it was error for the circuit court to render judgment for damages exceeding two hundred dollars.

In some of the cases in this court where too large damages have been recovered and no other error has intervened, the judgments have been affirmed on the conditions that the plaintiff remit the excess and pay the costs of the appeal to this court; but on reflection we have concluded to adopt a somewhat different practice, but leading to the same result.

The judgment will be reversed, and the cause remanded with directions to the circuit court to render judgment against the defendant for two hundred dollars damages, *provided* the plaintiff remit the excess recovered by him over that sum, and to award a *venire facias de novo* if the plaintiff fail to remit such excess.

*By the Court.* — It is so ordered.

A rehearing having been granted on the respondent's motion, his counsel called the attention of the court to the fact that the case was not commenced before a justice of the peace, but before a police justice of the village of New London, who, by the village charter (ch. 485, P. & L. Laws of 1870), had jurisdiction to the amount of $300 in all cases where justices of the peace had jurisdiction; and contended that the act referred to was a general or public act, and did not require the mention in its title of the organization of the police court (*Atkins v. Fraker*, 32 Wis., 510); and, if otherwise, the legality of the court could not be inquired into in this way (*In re Boyle*, 9 Wis., 264); and that, although those parts of the act conferring jurisdiction upon the court outside the limits of the village were unconstitutional, it did not affect this case, where the defendant resided in the village and was served with process there; and where, too, he had appeared and pleaded to the action without objection. *Malone v. Clark*, 2 Hill, 658; *Onderdonk v. Ranlett*, 3 id., 323; *Bloodgood v. Overseers, etc.*, 12

Johns., 285.  They further claimed that as the statute under which the complaint was drawn gave the plaintiff his damages without any *ad damnum* clause in the form of complaint there prescribed, the rule that a party can not recover more than he has demanded in his pleadings, was inapplicable, and no amendment was necessary in the circuit court.  *Dressler v. Davis*, 12 Wis., 58 ; *Palmer v. Wylie*, 19 Johns., 276 ; *Jackson v. Covert*, 5 Wend., 139 ; *Moore v. Tracy*, 7 id., 229 ; *Pelt v. Pelt*, 19 Wis., 193 ; secs. 142, 148, 151, ch. 120, R. S.

*Hudd & Wigman*, for appellants, contended that the charter of New London was a private or local act, and was void for not mentioning the police court in its title (Const., art. IV, sec. 18 ; 14 Wis., 295) ; that at least so much of the act as conferred jurisdiction upon the police justice outside of the village limits, was void ; and, as the increase of jurisdiction in amount would seem to have been intended by the legislature as a compensation for and part of the increased jurisdiction as to territory, the case was to be distinguished from *Atkins v. Fraker*, 32 Wis., 510, and *Slauson v. Racine*, 13 id., 398, and the whole of the act relating to the police court must be held void.   2 Gray, 398.   They further argued that the statute made the affidavit for replevin the complaint, and, even if the jurisdiction exceeded $200, the recovery was limited to the amount claimed. R. S., ch. 120, sec. 141 ; *Lester v. French*, 6 Wis., 580 ; *Dunbar v. Bittle*, 7 id., 143 ; *Keegan v. Singleton*, 5 id., 115.   They also insisted that the rule of damages laid down in the opinion in this case, and intimated in *Williams v. Phelps*, 16 id., 80, was erroneous, and that the recovery should in any event be limited to the value of the property.

The appeal was finally disposed of at the August term, 1875.

CoLE, J.  The counsel for the defendant, on the reargument, discussed fully the questions raised upon his former brief, and which to some extent were considered, and decided adversely to him, in the opinion filed by Mr. Justice LYON.  We deem

it unnecessary to enter upon a further examination of those questions, because, notwithstanding the criticism of counsel upon the opinion, we are quite well satisfied with the manner in which these questions are there decided. Of course what is there said upon the question of the jurisdiction of a justice of the peace in actions of replevin, was said under the impression that this cause was commenced before a justice. Such, however, was not the fact. The record shows that the action was commenced in the police court of the village of New London; was tried in that court, and, on judgment being rendered therein against the defendant, was taken by appeal to the circuit court. So that the question upon the record is not whether the value of the property in controversy exceeded the jurisdiction of a justice of the peace, and whether judgment for $208 damages could be rendered, but whether the law creating the police court of the village of New London is valid so far as it relates to the village, and whether the value of the property, or the damages given by the jury, exceeded the jurisdiction of that court. It is but justice to ourselves to say that on the motion for rehearing our attention was first called to the fact that the action was commenced in the police court.

In the first place it is argued by the counsel for the defendant, that the act (ch. 485, P. & L. Laws of 1870) incorporating the village of New London and creating the police court, is a private and local law, and invalid because the title does not mention the organization of that court as one of the objects of the law. This position is clearly untenable under the decisions of this court. *Cothren ex rel. v. Lean*, 9 Wis., 279: *Clark v. City of Janesville*, 10 id., 136; *Mills v. Gleason*, 11 id., 470; *Lawson v. Mil. & Northern R'y*, 30 id., 597; *Voight ex rel. v. Hoeflinger*, 31 id., 257. The village charter is a public or general law within the doctrine of these cases, and the court created by it is a municipal court within the meaning of the constitution. *Atkins v. Fraker*, 32 Wis., 510; *Connors v. Gorey*, id., 518. It was certainly within the power of the legislature to organize a

municipal court for the village of New London, and to confer upon it a jurisdiction within the village not to exceed that of the circuit court. *Atkins v. Fraker, supra.* What, then, is the jurisdiction conferred upon the police court by the charter? By sections 6 and 9, ch. 5 of the charter, it is in substance provided that the police justice shall have and possess all the authority, jurisdiction and powers of a justice of the peace, and shall have civil and criminal jurisdiction coextensive with the limits of the counties of Waupaca and Outagamie. By section 13, ch. 11, it is further enacted that such police justice shall have jurisdiction to the amount of $300, or the value thereof, in all cases where a justice of the peace has jurisdiction.

Now it is very clear, upon the decisions in *Atkins v. Fraker* and *Connors v. Gorey*, that it was not competent for the legislature to confer upon the police court jurisdiction which should extend beyond the territorial limits of the village. We fully approve of all that is said in those cases in regard to the proper interpretation of the constitutional provision bearing upon that question, and the power of the legislature under it. The jurisdiction granted cannot extend beyond the municipality. "In all actions the process of the court must be served within the territorial limits, and cannot be served beyond. In all transitory actions the voluntary appearance of the defendant, whether he resides within or without the municipality, will give jurisdiction over his person, the same as in any other court." This is the language of the chief justice in *Atkins v. Fraker*, which we have no disposition to qualify or explain away.

In this case the defendant in the action resided and did business in the village of New London; he there had the property in controversy; and the process was served upon him there. He also appeared, answered and went to trial without objection; and this undoubtedly gave the police court jurisdiction, unless the position of defendant's counsel is sound, that there was no court either *de facto* or *de jure*, and all proceedings before the police justice were *coram non judice*. And this presents the

Zitske vs. Goldberg.

question whether the provisions of the charter which confer jurisdiction upon the police court can be held valid so far as the village is concerned, and rejected as to the residue of the jurisdiction attempted to be conferred? We are inclined to hold that this can be done, and that the charter, so far as it creates a municipal court for the village, can be sustained. The grant of jurisdiction to that extent is complete and perfect, and not at all dependent upon the grant of jurisdiction coextensive with Waupaca and Outagamie counties. Nor does there appear to be any reasonable ground for assuming that the legislature would not have organized a municipal court for the village alone without this increased jurisdiction, had the constitutional objection to the court as created been considered. The valid and void portions of the act are not dependent upon each other, nor do they seem to be compensations or considerations for each other, within the language of the cases. We therefore think the case comes fairly within the rule which was recognized and applied in *Slauson v. The City of Racine*, 13 Wis., 398, and in *Atkins v. Fraker*. The latter case is strictly in point, as the court there sustained the act so far as the village of Omro was concerned, and rejected as invalid only the provision which attempted to give jurisdiction beyond the village limits.

It is objected to this construction that the cause could not have been removed to or tried by a justice of the peace, had application been made for its removal, or had the police justice been absent, sick or disqualified from trying it. We do not think these suggested difficulties, even if real, ought to overthrow the police court entirely. It is sufficient to say that this cause was tried by the police justice without objection, and, if the court had jurisdiction of the parties and of the amount in controversy, the proceeding was legal. The police justice had jurisdiction to the amount of $300, while the verdict and judgment were for only $208. The objection, therefore, which was supposed to exist when the former decision was made, and which was the ground for the reversal of the judgment, name-

ly, that the judgment for damages exceeded the jurisdiction of the court in which the action was commenced, has in fact no foundation.

This, together with the opinion already filed, we think sufficiently disposes of all material questions.

The judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.