Falk vs. Goldberg.   (Two cases.)

RYAN, C. J., took no part.

## FALK vs. GOLDBERG.   [Two cases.]

APPEAL TO SUPREME COURT. *(1) Amendment of proceeding to perfect appeal.*
JUSTICE'S COURT. *(2) Court of the "justice of the peace for the city [of New London] at large;" its true character; appeals therefrom.*

1. Under sec. 17, ch. 264 of 1860, where a party has given notice of appeal, and has omitted, through mistake or accident, to do some other act necessary to perfect the appeal e. g., the giving of a proper undertaking), the court below, or the judge thereof in vacation, may permit an amendment on proper terms, even after the papers have been returned to this court; and it is sufficient that the appeal is thus perfected before a motion to dismiss it is *heard.*
2. Under the charter of the city of New London, the court of the "justice of the peace for the city at large" is a mere justice's court, and not a municipal court (though in some respects the jurisdiction attempted to be conferred upon it may be in excess of that which can be conferred on justices' courts under the constitution); and as the city is composed of territory of two counties, an appeal will lie from said court to the circuit court of either of said counties; and that circuit court which first acquires jurisdiction by such an appeal, will retain it to the exclusion of the other.

APPEALS from the Circuit Court for *Outagamie* County.

For the appellant, briefs were filed signed by *Patchin & Weed* as his attorneys, with *Barnes & Goodland*, of counsel, and there was oral argument by *Mr. Goodland.*

For the respondent, a brief was filed by *Perry & Hetzel*, and there was oral argument by *B. J. Stevens.*

Falk vs. Goldberg. (Two cases.)

COLE, J. These two causes involve precisely the same questions of law, and will be considered together. In each a motion is made to dismiss the appeal, principally on the ground that no copy of an undertaking was served upon the respondent or his attorney. It appears that notice of the appeal was served upon the clerk and the respondent's attorney February 9, 1878. On the 11th of that month, a bond, instead of the statutory undertaking, was served upon the clerk; but whether a copy thereof was served upon the respondent's attorney, is a matter left in doubt by the affidavits used on this motion. After the record was returned to this court, and after the motion to dismiss was served, the appellant obtained leave of the circuit judge to amend the proceedings on appeal, by filing a proper undertaking and serving a copy thereof upon the respondent's attorney, which service was made on the 9th of August. Now the motion to dismiss is rested entirely upon the ground that the circuit judge had no power, under the statute, to permit an amendment for the purpose of perfecting the appeal, after the record had been returned to this court. We think this position is untenable. Sec. 17 of ch. 264, Laws of 1860, provides that when a party shall, in good faith, give notice of appeal, and shall omit, through mistake or accident, to do any other act necessary to perfect the appeal or make it effectual, or to stay proceedings, the court from which the appeal is taken, or a judge thereof in vacation, may permit an amendment on such terms as may be just. Power to perfect the appeal, conferred by this provision, is not restricted to the time that the record remains in the court below; nor can we see any sufficient reason why it should be. It is a special statutory power, not dependent for its exercise on the possession of the record, and is in aid of the jurisdiction of this court over the appeal. It is moreover convenient that the court below, or judge, should have the power to perfect the appeal; and the legislature has clearly conferred it. That the court below, or judge thereof, might exercise that power after the return had been made to this court, was not questioned in *Grant v. The Conn.*

*Mut. Life Ins. Co.*, 28 Wis., 388, and we think it could not well be, under the appeal statute. See also *Branger v. Buttrick*, 30 Wis., 153; *Gilbank v. Stephenson*, id., 155. Before the hearing of the motions to dismiss in this court, the appeals were properly perfected. The motions will therefore be denied, but without costs.

These were actions of replevin to recover property of less value than two hundred dollars, brought before the justice of the peace *at large*, of the city of New London. The city is organized out of portions of territory of the counties of Waupaca and Outagamie. Judgments for the value of the property or its return were rendered against the defendant, who thereupon took an appeal to the circuit court of Outagamie county, the justice transmitting the records and papers to that court. The circuit court, on its being made to appear, by the affidavit of E. P. Perry, that the justice before whom the action was tried, lived and held his court in the county of Waupaca, on motion, dismissed the appeals on the ground that it had no jurisdiction to try them. The correctness of this ruling is the sole question to be considered.

It is first necessary to determine the character of the court created by the city charter (ch. 162, Laws of 1877), known as the "justice of the peace for the city at large." On the part of the appellant it is claimed, that it is a municipal as distinguished from a justice's court; that it is in fact the same as the police court created by the village charter (ch. 485, P. & L. Laws of 1870), whose jurisdiction was defined in *Zitske v. Goldberg*, 38 Wis., 233, and the courts considered in *Atkins v. Fraker*, 32 Wis., 510; *Connors v. Gorey*, id., 518; *Jenkins v. Morning*, 38 id., 198; and *Mathie v. McIntosh*, 40 id., 120. We think, however, the better view is to regard it as a justice's court. Great difficulties will undoubtedly arise in sustaining the jurisdiction to the extent conferred by the city charter, whether it is treated as a justice or municipal court. The legislature speak of this officer as a "justice of the peace;" and while this language would not be controlling if we could see that it was really a municipal court, yet it is entitled to

some weight in determining the true character of the tribunal. Besides, the city charter is a complete revision of the village charter, and abrogates the latter (*Oleson v. Green Bay & Lake Pepin Railway Co.*, 36 Wis., 383); and if the legislature intended to keep the police court in existence, it is difficult to understand why the officer was not called a "police justice," as in the village charter. The justice for the city at large is chosen by the electors of the city for two years (ch. 3, sec. 2, charter); has civil and criminal jurisdiction coëxtensive with the limits of the counties of Waupaca and Outagamie, and sole and exclusive jurisdiction to hear complaints and conduct all trials in criminal cases to which the city may be a party (ch. 4, sec. 8), and in all actions for the recovery of any penalty or fine under the by-laws and ordinances of the city (ch. 5, sec. 41). Now, while it might be impossible to sustain this jurisdiction to the extent attempted to be conferred by these provisions, yet there is no question of any excess of jurisdiction in the case before us. The amount in controversy is within the jurisdiction of an ordinary justice; and, in view of the whole subject, we are inclined to hold that the justice for the city at large is a justice of the peace, and not a municipal judge, and that the general statutes in regard to justices' courts apply to it, as was held in the case of the *City of Boscobel v. Bugbee*, 41 Wis., 59. This being so, there would seem to be no difficulty in sustaining an appeal to some circuit court; and the question is, To what circuit court does an appeal lie, under the circumstances? In an ordinary case it could only be taken to the circuit court of the county in which the justice resided. But in this case the city is organized out of territory situated in two counties. There is no limitation on the power of the legislature to organize a city in that manner. The constitution (art. VII, sec. 15) provides that the electors of cities and villages, at their charter elections, shall, in such manner as the legislature may direct, elect justices of the peace. The legislature provided for the election of this justice for the city at large. From the necessity of the case, then, it would seem that an appeal must lie from his judgments to the circuit

court of either county. Of course, the circuit court which first acquired jurisdiction of the cause by appeal, would retain it, to the exclusion of the circuit court of the other county. This may be an anomaly, but it would seem to result *ex necessitate* from the condition of things; from organizing a city out of two counties, and providing for the election of a justice of the peace therein with a jurisdiction coëxtensive with the limits of both counties. The defendant, therefore, could appeal to the circuit court of either county; and the court which first acquired jurisdiction of the appeal, would oust the circuit court of the other county of all jurisdiction over the cause. We have already said that it might be impossible to sustain the jurisdiction of this justice to the extent attempted to be conferred by the charter in regard to the amount of fine or penalty which might be recovered before him, or in respect to local actions or criminal cases. But we shall not determine in this case this excess of jurisdiction in these particulars. That question can be decided when it shall arise. There is certainly no excess of jurisdiction in this action.

*By the Court.*— The orders of the circuit court dismissing the appeals are reversed, and the cause remanded for further proceedings according to law.